[No. F005904. Fifth Dist. Dec. 8, 1986.]

LILLIAN S. STRONG, Plaintiff and Respondent, v.
DONALD R. THEIS, as Trustee, etc.,
Defendant, Cross-complainant and Appellant;
ARTHUR McDONALD et al., Cross-defendants and Respondents.

**COUNSEL**

Isham, Macias, Lynch, Cronin & Rodriguez and Richard B. Isham for Defendant, Cross-complainant and Appellant.

Houk, Hicks, Spain & Line and James G. Line for Plaintiff and Respondent.

James H. Peloian for Cross-defendants and Respondents.

**OPINION**

**FRANSON, Acting P. J.—**

### STATEMENT OF THE CASE

Plaintiff and respondent, Lillian S. Strong (Strong), filed a complaint for declaratory relief against defendant and appellant, Donald R. Theis (Theis), trustee of the trust established under the will of Mildred Bethke, seeking a determination of the rights and duties of Strong and Theis under an agreement dated August 20, 1965, entered into between Strong and Mildred Bethke, also known as Mildred McDonald and Mildred Theis (decedent). This agreement related to a parcel of real property owned one-half by Strong and one-half by decedent and created both an option contingent upon the death of one of the parties and a right of first refusal. Theis filed a cross-complaint for declaratory relief against respondents Arthur McDonald and Beverly Chapman (collectively McDonald), prospective purchasers of Strong's undivided one-half interest in the real property, seeking a determination that he is entitled to purchase the real property pursuant to the 1965 agreement as decedent's successor in interest.

Strong's motion and Theis's countermotion for summary judgment were heard March 19, 1985. Summary judgment was granted in favor of Strong. Theis has appealed.[1]

### STATEMENT OF THE FACTS

Strong and decedent each owned an undivided one-half interest in the Seven-Up bottling plant in Visalia as tenants in common. On August 20, 1965, they executed a "Property Purchase Agreement" with respect to this property "for the purpose of protecting the interests of the owners in the event either of said owners dies or seeks to dispose of their interest in the said real property." The protections created by this agreement are preemptive

---

[1]Cross-defendants and respondents McDonald have argued that Strong's appeal should be dismissed as untimely filed. We have concluded the appeal was timely filed from the second judgment of July 9, 1985, because the earlier judgment filed June 10, 1985, did not commence the appeal period. Accordingly, we shall treat the appeal on its merits.

rights in the event of a proposed sale by one owner to a third party and an option in the event of the death of one of the owners.

The preemptive rights are set forth in paragraph "First" as follows: "No owner of said property shall transfer, assign, hypothecate or in any way alienate any of her interest or any of her right or interest therein without the prior written consent of the other owner, and unless and until she shall have first given written notice by registered mail to the other owner of said real property which said notice must name the proposed transferee and specify the interest to be transferred and the price therefor. The other owner as heretofore named shall then have the option to purchase said interest in said property at the price specified in said notice."

Paragraph "Second" establishes the option which is exercisable by the surviving owner "[i]n the event of a death of one of the parties heretofore mentioned and one of the owners of said property."

The agreement terminates by its own terms upon: "(1) The written agreement of all of the parties. (2) The completion of the sale by one joint owner to the other joint owner. (3) The refusal of the option to purchase by the joint owner not selling or the surviving joint owner."

Paragraph "Fifth" requires the parties to perform any further acts required to complete the agreement. It also contains a standard "successors and assigns" clause.

This agreement was recorded in Tulare County August 25, 1965.

Decedent died August 12, 1976. Strong did not exercise the option which arose upon decedent's death to purchase decedent's interest in the bottling plant. Thus, in accordance with the terms of decedent's will, a testamentary trust owns an undivided one-half interest in the property as decedent's successor in interest. Theis is the trustee of this trust.

On April 15, 1980, Strong granted an option to McDonald giving McDonald both the right to purchase Strong's interest in the bottling plant following her death and preemptive rights.

On February 15, 1984, Strong and McDonald entered into an agreement for the sale of Strong's interest in the bottling plant to McDonald. Theis refused to consent to the sale and has attempted to exercise the preemptive rights contained in the 1965 agreement as decedent's successor in interest.

Strong states in her declaration filed in conjunction with her summary judgment motion that she has "no independent recollection of the Property Purchase Agreement dated August 20, 1965 . . . ."

### DISCUSSION

I. *Whether appellant succeeded to the preemptive rights granted to decedent under the 1965 agreement.*

This case turns on the interpretation of the 1965 agreement executed by Strong and decedent. Strong, the only surviving party to the agreement, stated in her declaration that she has no independent recollection of this agreement. Thus, there is no extrinsic evidence available to aid in the interpretation.

■ The trial court found that the 1965 agreement expired by its own terms and that principles of fairness and mutuality of contract required this interpretation. However, in the absence of competent extrinsic evidence, it is solely a judicial function to interpret a written instrument. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839].) Thus, this court is not bound by the trial court's interpretation of this agreement but rather has a duty to independently examine it. (*Ibid.*)

■ "In the interpretation of contracts, the paramount consideration is the intention of the contracting parties ' . . . as it existed at the time of contracting, so far as the same is ascertainable and lawful.' [Citations.]" (*Moss Dev. Co.* v. *Geary* (1974) 41 Cal.App.3d 1, 9 [115 Cal.Rptr. 736].) "*[T]he contract must be construed as a whole and the intention of the parties must be ascertained from the consideration of the entire contract, not some isolated portion* [citations]; *a contract entered into for the mutual benefit of the parties is to be interpreted so as* to give effect to the main purpose of the contract and *not to defeat the mutual objectives of the parties* [citations]; . . ." (*County of Marin* v. *Assessment Appeals Bd.* (1976) 64 Cal.App.3d 319, 325 [134 Cal.Rptr. 349].)

■ The 1965 agreement states that it was entered into "for the purpose of protecting the interests of the owners in the event either of said owners dies or seeks to dispose of their interest in the said real property." It is not clear to whom the term "owners" refers. It is susceptible of two interpretations: the parties to the agreement only or to the parties and the parties' successors in interest.

However, there are indications in the agreement that the parties intended the rights conferred by it to be personal to Strong and decedent. The

preemptive rights in paragraph "First" are conferred upon "the other owner as heretofore named." The only owners heretofore named are Strong and decedent. Further, the option in paragraph "Second" is triggered by "a death of one of the parties heretofore mentioned and one of the owners of said property." Again, only Strong and decedent are "parties heretofore mentioned." Finally, the agreement's use of feminine pronouns when referring to "owner" in paragraph "First" indicates that "owners" refers to Strong and decedent.

The termination provisions in paragraph "Fourth" also support the proposition that the rights under the agreement were intended to be personal to Strong and decedent. One explicit way for the agreement to terminate is upon "the refusal of the option to purchase by the joint owner not selling or the surviving joint owner." Nevertheless, the term "refusal of the option" is ambiguous; it is unclear what the mechanics of a "refusal of the option" would be. Theis asserts that a "refusal" is akin to a waiver, and since Strong did not remember the option, she could not waive it. Strong asserts that a mere failure to exercise the option as occurred here is akin to a refusal to exercise the option. But in one sense the mechanics of a "refusal" are irrelevant. The importance of this term is the insight it gives into the parties' intent. It is reasonable to assume that the parties did not intend to forget that this agreement existed. Thus, it can be inferred that the parties intended that the remaining owner would either purchase the other owner's interest or become a tenant in common with the proposed owner or heir, and following the change in ownership, the agreement would terminate. Hence, applying an objective standard of interpretation, Strong's failure to exercise the option effectively terminated the agreement.

It is the language in paragraph "Fifth" which can be construed as being contrary to the personal nature of this agreement. That paragraph provides that "[e]ach party agrees to perform any other and further acts required to complete the carrying out and completion of the provisions of this agreement and this agreement shall bind *and inure to the benefit of* the successors, assigns, personal representatives, heirs and legatees of the respective parties." (Italics added.) This paragraph can be interpreted either as merely requiring both the parties and the parties' successors to perform any acts necessary to carry out the agreement or as additionally conferring the option and preemptive rights upon the parties' successors in interest.

 If an agreement is susceptible to more than one interpretation, the court is bound to give the agreement ". . . such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." (Civ. Code, § 1643; *Moss Dev. Co.* v. *Geary, supra,* 41 Cal.App.3d 1, 9-

10.) ■ Based on this rule, the ambiguity created by paragraph "Fifth" should be resolved in favor of the contingent option and preemptive rights being personal to the parties. Otherwise, the agreement violates the rule against perpetuities.

■ California follows the common law rule against perpetuities. This rule invalidates any property interest which will not be certain to vest within the time of a life in being at the creation of the interest plus 21 years. (Civ. Code, § 715.2; *Taormina Theosophical Community, Inc.* v. *Silver* (1983) 140 Cal.App.3d 964 [190 Cal.Rptr. 38].) If, at the time the interest is created, there exists even a bare possibility that the interest in question may not vest within the prescribed period, the rule has been violated. (*Estate of Grove* (1977) 70 Cal.App.3d 355 [138 Cal.Rptr. 684].) Both options and preemptive rights are property interests subject to the rule against perpetuities. (*Alamo School Dist.* v. *Jones* (1960) 182 Cal.App.2d 180 [6 Cal.Rptr. 272]; *Taormina Theosophical Community, Inc.* v. *Silver, supra,* 140 Cal.App.3d 964.)

■ Here, Theis contends that he succeeded to the preemptive rights created by the 1965 agreement. The preemptive rights remain unvested until the other owner decides to sell the property. (*Taormina Theosophical Community, Inc.* v. *Silver, supra.*) If the rights are inheritable, it would be possible for one party's successor to assert the preemptive rights against the other party's successor beyond the prescribed period. Therefore, when created, those rights were not certain to vest or fail within the period of the rule. ■ However, a court is required to reform or construe a document to avoid violating the rule if it is possible to do so consistent with the creator's general intent. (Civ. Code, § 715.5.) As discussed above, construing the 1965 agreement as creating rights personal to Strong and decedent is consistent with the apparent intent of those parties and will also bring the agreement within the rule.

Theis sets forth an alternative interpretation to avoid the rule against perpetuities problem. He proposes that the 1965 agreement was intended to remain in effect until the death of the second cotenant to die. Under this interpretation, the successors in interest of the first cotenant to die inherit all rights under the agreement but the successors in interest of the second cotenant to die do not. However, there is absolutely no indication in the agreement that the parties intended this result. Further, permitting one party's successors to inherit the rights under the agreement but not the other party's could produce inequitable results. ■ The court must avoid an interpretation which will make a contract extraordinary, harsh, unjust, or inequitable. (*County of Marin* v. *Assessment Appeals Bd., supra,* 64

Cal.App.3d 319, 325.) Therefore, Theis's proposed interpretation of the agreement is without merit.

In sum, the 1965 agreement should be interpreted as creating rights personal to Strong and decedent. This interpretation is consistent with the apparent intent of the parties as evidenced by the agreement itself, avoids violating the rule against perpetuities, and avoids an inequitable result.

The judgment is affirmed.

Hanson (P. D.), J., and Hamlin, J., concurred.