[No. B215059. Second Dist., Div. Four. Dec. 23, 2010.]

PHILIP SCHUMAN et al., Plaintiffs, Cross-defendants and Appellants, v. ALLAN IGNATIN et al., Defendants, Cross-complainants and Appellants; ERIC F. EDMUNDS, JR., et al., Cross-defendants, Cross-complainants and Appellants.

## COUNSEL

John B. Murdock for Plaintiffs, Cross-defendants and Appellants.

Williams & Kilkowski and James M. Kilkowski for Defendants, Cross-complainants and Appellants.

Eric F. Edmunds, Jr., for Cross-defendants, Cross-complainants and Appellants.

## OPINION

**WILLHITE, Acting P. J.**—This case involves a dispute among property owners in a general plan development of 68 homes in Los Angeles. The

owners of one of the properties, Allan Ignatin and Janet Sobell (collectively, Ignatin),[1] want to build a house that other property owners believe would violate recorded restrictions (conditions, covenants and restrictions (CC&R's)) governing the development. The owners of a neighboring property, Philip Schuman and Margaret McNulty (collectively, Schuman), filed a lawsuit against Ignatin, seeking to block the proposed construction. Ignatin cross-complained against Schuman and several other property owners, including Eric F. Edmunds, Jr., and Debora Edmunds (collectively, Edmunds), seeking a determination that the proposed house would not violate the CC&R's. Edmunds, in turn, filed a cross-complaint against Ignatin, alleging that the proposed house would violate the CC&R's, create a nuisance, and violate city codes and the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.).

During a recess after the first day of a bench trial, Ignatin for the first time challenged the validity of a recorded amendment that purportedly extended the duration date set forth in the original CC&R's, and asked the trial court to find that the CC&R's expired on January 1, 1999, the original expiration date. The trial court made that finding, entered judgment in favor of Ignatin on Schuman's complaint, and dismissed Ignatin's and Edmunds's cross-complaints as moot. Schuman, Edmunds, and Ignatin all appeal: Schuman and Edmunds challenge, among other things, the trial court's finding that the CC&R's expired, arguing that the applicable statute of limitations bars Ignatin's assertion that the amendment of the CC&R's was invalid, and Ignatin challenges the dismissal of Ignatin's cross-complaint as moot. We conclude that Ignatin's assertion of the invalidity of the amendment is time-barred. Accordingly, we reverse the judgment and remand the matter for retrial, at which Ignatin may present other asserted defenses against Schuman's and Edmunds's claims and seek the relief sought in Ignatin's cross-complaint.

## BACKGROUND[2]

In 1965, Link Builders, owners of real property described as lots 1 through 68 of tract 22876 (Tract 22876) in the City of Los Angeles, recorded a

---

[1] Although Ignatin refers to two people, we will use the singular when using that name (as well as other couples' names) in this opinion.

[2] The trial court entered judgment midtrial, without any dispositive motion, based upon supplemental trial briefs and the pleadings. Our recitation of the factual background therefore is based in large part on the allegations of the complaint and cross-complaints and the exhibits attached thereto.

declaration of establishment of conditions and restrictions that subjected all of the lots in the general plan development to various conditions and restrictions. Among other things, the CC&R's provided that no structure on any lot may be constructed in such a manner as to obstruct the scenic view of any other lot owner. The CC&R's also provided that the conditions and restrictions would run with the land, and would remain in force until January 1, 1999.

On December 31, 1998, the Brentwood Hills Homeowners Association recorded a document entitled "Amendment to Extend Duration of Declaration of Establishment of Conditions and Restrictions" for Tract 22876 (the Amendment). The Amendment, which was signed in mid-December 1998 by the owners of 43 of the 68 lots, stated that the owners desired to amend the CC&R's to provide that the restrictions and conditions would remain in effect until January 1, 2009, and would be continued automatically for 10-year periods unless a majority of owners recorded a written agreement changing, modifying, or extinguishing the CC&R's. Schuman signed the Amendment as owner of lot 51 (2569 Cordelia Road, a different lot than the lot Schuman owned at the time this lawsuit was initiated).[3] Edmunds signed as owner of parcel A (2576 Cordelia Road). Ignatin's predecessor as owner of lot 53 (2583 Cordelia Road, which was owned by Alfred S. Yue at the time the Amendment was signed) also signed the Amendment. Ignatin purchased lot 53 in or around October 2005.

Sometime before September 2007, Schuman, Edwards, and other owners of homes in Tract 22876 learned that Ignatin planned to construct a new, much larger home on lot 53. Schuman and the other neighbors believed the new home would violate the CC&R's, including the view protection provisions. Some of the neighbors expressed to Ignatin their concerns about the proposed construction, and made suggestions about how to abate some of those concerns. When Ignatin did not respond to those suggestions, Schuman, Edmunds, and several other neighbors sent a letter to Ignatin on September 10, 2007, demanding that Ignatin suspend all development of the property until the neighbors' concerns were addressed. Ignatin responded to the letter a week later, disputing that the proposed construction would violate the CC&R's; Ignatin did not challenge the validity of the CC&R's or the Amendment.

---

[3] Schuman owned and lived at 2601 Cordelia Road at the time the instant lawsuit was filed. The owner of that property at the time the Amendment was recorded was not among the owners who signed the Amendment.

On October 5, 2007, Schuman filed a complaint against Ignatin seeking a declaration that Ignatin's proposed construction would violate the CC&R's, and an injunction prohibiting Ignatin from constructing any structure or cultivating any landscaping that would interfere with Schuman's scenic view in violation of the CC&R's. That same day, Schuman recorded a "joinder" in the Amendment, as owner of lot 54.

Ignatin filed an answer—a general denial, with several affirmative defenses, none of which challenged the validity of the CC&R's or the Amendment—and a cross-complaint for declaratory relief against Schuman, Edmunds, and the other property owners who signed the September 10, 2007 letter to Ignatin. The cross-complaint alleged that all the lots in Tract 22876 "are subject to recorded CC&R's," but that Ignatin's proposed construction would not violate the CC&R's and the Amendment. The cross-complaint also alleged that Schuman, Edmunds, and the other owners "may not enforce the [CC&R's] and the Amendment, because they have acquiesced in violations of the [CC&R's] and the Amendment, because they have waived their right to enforce the [CC&R's] and the Amendment, and because changed circumstances in Tract 22876 render the [CC&R's] and the Amendment obsolete and enforcement of the [CC&R's] and Amendment against [Ignatin] inequitable and arbitrary." Ignatin requested a declaration that the proposed construction "does not violate the [CC&R's] or the Amendment, or alternatively, that the [CC&R's] and the Amendment may not be enforced . . . to prevent [Ignatin's] construction of a residence on [Ignatin's] property in accordance with the Plans."

Edmunds responded with a cross-complaint against Ignatin, seeking a declaration that the proposed construction would violate the CC&R's, city codes and laws, and CEQA, and would constitute a nuisance; Edmunds also sought an injunction prohibiting Ignatin from constructing any structure that would interfere with Edmunds's rights.

A court trial on the matter began on June 20, 2008. In his opening statement, Ignatin's attorney asserted the evidence would show that Schuman allowed construction of another house that blocks Schuman's view, that Ignatin's proposed house would not unreasonably block any significant views, and that Schuman, Edmunds, and other neighbors could not enforce the CC&R's against Ignatin because they violated the CC&R's themselves. There was no reference made to the possible invalidity of the CC&R's or the Amendment.

Following opening statements, Schuman presented two expert witnesses—an architect who testified about how the proposed house would block Schuman's view, and a real estate appraiser who testified about the value of Schuman's property and the change in value if the proposed house were built. Schuman then called George Marnon, an owner of one of the lots in Tract 22876. Marnon testified that he bought his property after the CC&R's had been extended by the Amendment, and that the existence of CC&R's protecting the view was an important consideration when he and his wife decided to buy the property; he noted that he and his wife were aware that Tract 22876 was the only tract in the neighborhood that chose to extend the duration of the CC&R's. He also testified that he and his wife had to file a lawsuit against another neighbor to enforce the CC&R's about five years earlier, when the neighbor built a fence that obstructed his view. He and his wife estimated that the value of the view was $100,000, so they were willing to spend that much in legal fees to preserve that view. He testified that even though Ignatin's proposed house would not interfere with his view, he was concerned that, if Ignatin were to prevail, other property owners would be allowed to build structures that would block his view.

Marnon was the last witness on the first day of trial. Schuman's attorney estimated that he would call four more witnesses on the next day of trial, and Ignatin's attorney said that he would call one or two more witnesses before the parties and the court participated in a viewing at the location. On the next day of trial, June 23, 2008, the parties met with the court in chambers, after which the matter was continued until September 29, 2008, to allow the parties to engage in further settlement discussions and/or mediation.

On August 11, 2008, Ignatin filed a "Supplemental Trial Brief." The stated purpose of this brief was "to address three major issues not previously brought to the [trial] Court's attention." Ignatin argued he was "entitled to judgment as a matter of law in this action" because (1) the CC&R's expired on January 1, 1999; (2) the Amendment was ineffective to extend the CC&R's because it was not signed by all of the lot owners; and (3) Schuman could not enforce the CC&R's against Ignatin because the previous owner of Schuman's lot did not sign the Amendment. At a status conference held on September 3, the trial court ordered further briefing and set a hearing to address the issues Ignatin raised. Schuman filed a response that addressed the merits of Ignatin's arguments, but also asserted that the arguments were untimely, outside the pleadings, and could not be tried without amendment of Ignatin's pleadings.

Following argument, the trial court ruled that Ignatin did not waive the challenge to the CC&R's by not raising it sooner, and that the Amendment did not extend the CC&R's because it was not signed by all of the lot owners. The court's ruling, set forth in a minute order, concluded: "This Court is legally compelled to find that the CCRs expired on January 1, 1999, that the restrictions of the CCRs are not covenants running with the land and that the Defendants are entitled to judgment as a matter of law. The Court is well aware of the impact of this ruling on the plaintiffs and each of the 68 property owners and strongly encourages the parties to take this to the Court of Appeal for guidance."

Ignatin submitted a proposed judgment that provided that Schuman would take nothing on the complaint, that Edmunds would take nothing on his cross-complaint, and that Ignatin would be granted declaratory relief, decreeing that (1) the CC&R's expired by their terms and are of no force and effect; (2) the Amendment did not extend the CC&R's or create equitable servitudes or covenants running with Ignatin's property, and is void; and (3) neither the CC&R's nor the Amendment impose any restraint on Ignatin's proposed construction. The trial court did not sign the proposed judgment, instead writing, "The Court's ruling on the Minute Order will stand as the Judgment." In the meantime, Edmunds filed an objection to the proposed judgment, arguing that it was inappropriate to issue a final ruling on his cross-complaint because the ruling did not address or resolve all issues alleged in the cross-complaint.

Three months later, Ignatin filed a motion for entry of judgment. Ignatin noted that there was no signed judgment because neither the minute order nor the handwriting on the submitted proposed judgment was signed by the court. Ignatin also pointed out that, although the minute order disposed of all claims based on the CC&R's and the Amendment, it did not mention all of the cross-defendants. The motion attached two different proposed judgments, and asked that the court sign one of them, or any other judgment that finally adjudicated the rights of all parties. In response to the motion, Edmunds noted that the court had not yet ruled on his earlier objection to the proposed judgment.

At the hearing on Ignatin's motion, the court provided the parties with a proposed judgment nunc pro tunc it had drafted. That proposed judgment stated that Schuman "shall take nothing by way of the complaint," that Ignatin shall recover costs from Schuman, and that Ignatin and Edmunds

"shall take nothing by way of their cross-complaints." Counsel for Ignatin argued that the provision stating that Ignatin shall take nothing on his cross-complaint was incorrect; he asserted that Ignatin prevailed on his cross-complaint because the court found that the CC&R's had expired. Counsel for Schuman also pointed out that Edmunds had filed an objection to the original proposed judgment on the ground that the minute order did not address all of the issues in his cross-complaint, including his allegation that Ignatin's proposed construction would violate CEQA.[4] The trial court overruled Edmunds's objection and signed the judgment nunc pro tunc, with minor changes.

Ignatin moved to vacate the judgment and enter a new judgment. Ignatin argued that the judgment nunc pro tunc was erroneous because "the Court's ruling in favor of [Ignatin] requires a judgment in [Ignatin's] favor on their Cross-Complaint." Ignatin also filed a motion to tax costs, after counsel for Schuman (who also represented all of the neighbors who were sued in Ignatin's cross-complaint) filed a memorandum of costs seeking reimbursement of the filing fees for all of the cross-defendants' answers. In the motion to tax costs, Ignatin asserted that the court's ruling that the CC&R's had expired and the Amendment did not extend them "was precisely the relief sought in [Ignatin's] cross-complaint. Under applicable precedent, this constituted 'relief' to [Ignatin] and against the Cross-[defendants]."

At the hearing on both motions, the trial court found that Ignatin's "request for declaratory relief in the cross-complaint was rendered moot by the finding that the CC&R's had expired and were not extended by [the Amendment]," noting that the relief Ignatin sought in the cross-complaint was that the planned construction did not violate the CC&R's or the Amendment or, alternatively, that the CC&R's and the Amendment could not be enforced by cross-defendants to prevent the planned construction. The court also found that the cross-defendants on Ignatin's cross-complaint were not entitled to recover costs because Ignatin "obtained greater relief by prevailing on the complaint."

Schuman and Edmunds timely filed a notice of appeal from the judgment nunc pro tunc to the extent it denied relief on Schuman's complaint and Edmunds's cross-complaint. Ignatin also timely filed a notice of appeal from the portion of the judgment nunc pro tunc denying relief on Ignatin's cross-complaint and from the postjudgment order denying Ignatin's motion for a new and different judgment.

---

[4] Mr. Edmunds, who is an attorney and represented himself and his wife on their cross-complaint, had informed the trial court that he was unable to appear at the hearing on Ignatin's motion because he was engaged in trial in Orange County.

■■■■■■■■■■
■■■■■■■■■■

## DISCUSSION

Most of the arguments in the parties' briefs on appeal address the requirements for modifying CC&R's, or whether the CC&R's and the Amendment constitute equitable servitudes or covenants running with the land as between the owners who signed the Amendment, or whether all of the owners in Tract 22876 needed to be joined in the lawsuit. We need not address those issues, however, because we agree with Schuman and Edmunds's argument that Ignatin's challenge to the validity of the Amendment is barred by the applicable statute of limitations, and therefore the judgment in favor of Ignatin, which was based solely on the trial court's finding that the Amendment was invalid, must be reversed.

### A. Challenges to Recorded Amendments to CC&R's Must Be Brought Within Four Years

Ignatin argued, and the trial court found, that the Amendment was invalid (and therefore did not extend the duration of the CC&R's) because it was not signed by every lot owner in Tract 22876. Schuman and Edmunds disagree that all lot owners were required to sign the Amendment but they contend, relying upon a recent decision of the Fourth District Court of Appeal, Division One (filed after judgment was entered in this case), that in any event, the statute of limitations bars any challenge to the validity of the Amendment made more than four years after the Amendment was recorded.

That case, *Costa Serena Owners Coalition v. Costa Serena Architectural Com.* (2009) 175 Cal.App.4th 1175 [97 Cal.Rptr.3d 170] (*Costa Serena*), involved amendments to the declarations of restrictions governing the seven phases of a planned development consisting of 724 homes. The community was developed in the early 1970's, and separate, essentially identical, declarations of restrictions were recorded for each phase. (*Id.* at p. 1178, fn. 1.) Each declaration provided that it could be amended by a recorded instrument signed by at least 75 percent of the record owners, and that the declaration would expire on December 31, 2006, unless a majority of owners executed and recorded a writing extending the restrictions. (*Id.* at p. 1181.)

The declarations were amended in 1986 by documents that were signed only by members of the unincorporated associations (the architectural committees) named in the declarations to enforce the declarations' provisions. (*Costa Serena, supra,* 175 Cal.App.4th at p. 1181.) In 1987, the declarations were amended again to, among other things, combine all seven phases into a single community that would be governed by a single unified declaration, enforced by a single architectural committee (Architectural Committee). The 1987 amendment also altered the provision governing amendments, and

provided that an amendment may be signed by a majority of the members of the Architectural Committee, certifying that the amendment had been approved by a vote of the owners as required by the declaration. The 1987 amendment was signed only by the members of the Architectural Committee. (*Id.* at p. 1182.)

The unified declaration (the result of the 1987 amendment) was amended in 1999, to provide that the declaration could be amended or revoked by a vote of more than 50 percent of all owners entitled to vote and casting ballots, and that an amendment would be effective upon the recording of a certificate of amendment executed by certain members of the Architectural Committee, setting forth the amendment and certifying that the voting requirements had been met. The 1999 amendment was signed by members of the Architectural Committee, who certified that the amendment was approved by a vote of the owners as required by the declaration. (*Costa Serena, supra*, 175 Cal.App.4th at pp. 1182–1183.)

In 2006, the Architectural Committee attempted to extend the unified declaration, which was to expire by its terms on December 31, 2006, using the amendment process set forth in the 1999 amendment. A group of owners (the Coalition) filed a lawsuit to enjoin the Architectural Committee from proceeding with the voting process. The Coalition contended that the seven separate declarations had not been amended into a single unified declaration, and sought declaratory relief regarding the proper interpretation of the original provisions governing amendments. (*Costa Serena, supra*, 175 Cal.App.4th at pp. 1183–1184.) After the trial court issued the requested preliminary injunction, the Architectural Committee obtained signed consents to extension from 375 owners and recorded a document entitled "Extension of Declaration of Restrictions." The Coalition then amended its complaint to allege the invalidity of the extension document, and sought cancellation of the prior amendments and the extension document. (*Id.* at p. 1184.) The trial court granted summary adjudication to the Coalition and entered a judgment declaring, among other things, that the declarations for all seven phases expired on December 31, 2006, and that the 1986, 1987, and 1999 purported amendments were void *ab initio*. (*Id.* at p. 1187.)

The Court of Appeal reversed, finding the Coalition's challenge to the 1986, 1987, and 1999 amendments was untimely. The appellate court found no support for the trial court's conclusion that the amendments were void *ab initio*, observing that "[t]he trial court apparently misapprehended the limited circumstances in which a court may conclude that an instrument is a complete nullity, as opposed to being voidable pursuant to a timely challenge by a party, due to a deficiency in the instrument's creation." (*Costa Serena, supra*, 175 Cal.App.4th at p. 1191.) The Court of Appeal explained that a

challenge to an amendment on the ground that it was enacted in a manner that failed to conform to the requirements of the provision governing amendments would render the amendment voidable, not void *ab initio*. (*Id.* at p. 1193, citing *Peyton v. Cly* (1960) 184 Cal.App.2d 193, 196 [7 Cal.Rptr. 504] ["A contract not executed in conformity with the provisions of the statute of frauds is not void but merely voidable."].) Because the amendments were voidable, rather than void *ab initio*, the court concluded the Coalition's challenge was barred by Code of Civil Procedure section 343, the four-year statute of limitations applicable to claims seeking to set aside all kinds of instruments, which began to run as to each amendment when it was recorded. (*Costa Serena, supra,* 175 Cal.App.4th at p. 1196.)

## B.   *The Statute of Limitations Bars Ignatin's Challenge*

In the present case, the Amendment extending the CC&R's was recorded in December 1998. Ignatin first sought to challenge the validity of the Amendment in August 2008. Under *Costa Serena*, Ignatin's challenge is barred by the statute of limitations. (*Costa Serena, supra,* 175 Cal.App.4th at p. 1196.) Ignatin argues, however, that his challenge is not barred because (1) *Costa Serena* conflicts with the rule stated in *Taormina Theosophical Community, Inc. v. Silver* (1983) 140 Cal.App.3d 964 [190 Cal.Rptr. 38] (*Taormina*) and should not be followed, (2) Schuman and Edmunds did not plead the statute of limitations in their answers to Ignatin's cross-complaint and therefore waived that affirmative defense, and (3) the statute of limitations does not bar Ignatin from asserting the invalidity of the Amendment as a defense. We disagree.

### 1.   Costa Serena *does not conflict with* Taormina

Ignatin argues that *Costa Serena* should not be followed because it allows amendments that clearly do not conform to the amendment procedure set forth in the CC&R's to become binding after four years. Ignatin contends the better rule is stated in *Taormina*, in which the Court of Appeal found that an amendment to CC&R's that was not made in accordance with the procedures established in the CC&R's was void and not enforceable. (*Taormina, supra,* 140 Cal.App.3d at p. 970.) But as the court in *Costa Serena* observed, "*Taormina* supports only the limited proposition that amendments to CC&R's . . . that are not made pursuant to the procedure 'established in the provision' for modifying the restrictive covenants may be voided under certain circumstances. [Citation.] The case does not speak to the issue here—i.e., whether an amendment that was not enacted pursuant to the procedure set out in the provisions of a declaration of restrictions is void *ab initio*, or merely voidable. . . . The *Taormina* court did not refer to the documents at issue as void *ab initio*, nor did it appear to reach this

conclusion. Rather, it appears that the court was simply permitting the plaintiff to *void* a voidable instrument. [¶] . . . *Taormina* . . . does not state that amendments to CC&R's . . . that are not adopted in conformance with the provisions of those CC&R's . . . may be challenged on this basis and voided *at any time.* The lawsuit in *Taormina* was filed less than three years after the amendment in question was recorded; there was no statute of limitations issue raised in that case." (*Costa Serena, supra,* 175 Cal.App.4th at p. 1194.) In short, *Taormina* is not inconsistent with *Costa Serena.*

### 2. *Schuman and Edmunds's failure to plead the statute of limitations did not waive the affirmative defense*

Ignatin contends that Schuman and Edmunds cannot assert the statute of limitations because they did not plead it in their answers to Ignatin's cross-complaint. (Citing *Minton v. Cavaney* (1961) 56 Cal.2d 576, 581 [15 Cal.Rptr. 641, 364 P.2d 473].) Had Ignatin asserted the invalidity of the Amendment and/or expiration of the CC&R's in his cross-complaint, this argument might prevail. But Ignatin's challenge was not raised in the cross-complaint. Indeed, the cross-complaint alleged that the lots in Tract 22876 were subject to the CC&R's, but that Ignatin's proposed construction would not violate the CC&R's, or that the CC&R's were not enforceable for various reasons not related to their validity. In fact, Ignatin's challenge to the validity of the CC&R's and the Amendment was not even raised in a motion. It was raised in a supplemental trial brief, filed during a recess in the trial. In light of the timing and the manner in which Ignatin's challenge was asserted, we conclude that Schuman and Edmunds did not forfeit the statute of limitations defense by failing to plead it.

### 3. *Ignatin's defensive challenge sought affirmative relief, and therefore the statute of limitations applies*

Ignatin argues that the statute of limitations does not bar his assertion of the invalidity of the Amendment as a defense to the claims against him. It is true that, in many cases, statutes of limitations do not apply to defenses. (See, e.g., *Styne v. Stevens* (2001) 26 Cal.4th 42, 51–52 [109 Cal.Rptr.2d 14, 26 P.3d 343].) Those cases generally involve attempts to enforce fraudulent or illegal contracts. (*Ibid.,* and cases cited therein.) But when an asserted defense "sets up an affirmative cause of action, the adverse party may . . . show that the attempted defense is barred by the statute of limitations." (*Hermosa Beach Land & Water Co. v. Law Credit Co.* (1917) 175 Cal. 493, 495 [166 P. 22] (*Hermosa Beach*); see also *Strong v. Strong* (1943) 22 Cal.2d 540, 544–545 [140 P.2d 386].) Thus, the Supreme Court has held that, in an action to quiet title, the defendant's answer asking the court to require the plaintiff to accept the defendant's tender of the balance due on a contract of conveyance, sought

affirmative relief that was barred by the statute of limitations. (*Hermosa Beach, supra*, 175 Cal. at p. 495.) And in another quiet title action, the Supreme Court held that the defendant's answer asserting ownership of the property at issue was actually a cause of action to avoid the plaintiff's deed, which was barred by the applicable statute of limitations. (*Strong v. Strong, supra*, 22 Cal.2d at pp. 544–545.)

In the present case, Ignatin's challenge to the validity of the Amendment set up an affirmative cause of action. Indeed, Ignatin repeatedly argued in the trial court—and argues in his own appeal—that the success of his defense *required* a judgment in his favor on his cross-complaint. And, although the trial court denied Ignatin's request for judgment in his favor on the cross-complaint, the court agreed that Ignatin had obtained affirmative relief through his defense. In fact, the court acknowledged that its ruling on that defense would affect all of the property owners in Tract 22876, and that Ignatin obtained greater relief by prevailing on Schuman's complaint than Schuman, Edmunds, and the other cross-defendants obtained by the dismissal of Ignatin's cross-complaint.

Because Ignatin sought, and obtained, a judgment declaring the Amendment invalid, we conclude that his defense constituted an affirmative cause of action to which the statute of limitations applies. Application of the statute of limitations is particularly appropriate in this case, because Ignatin's challenge was to a recorded Amendment to CC&R's—brought almost 10 years after it was recorded—on which property owners have relied in purchasing, selling, or retaining their property. As the Supreme Court has observed, " '[s]tatutes of repose are in fact favored in the law . . . . ". . . The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." [Citation.]' [Citation.]" (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 756 [76 Cal.Rptr.2d 749, 958 P.2d 1062].) Because Ignatin's challenge to the validity of the Amendment was asserted more than four years after the Amendment was recorded, it is barred by the statute of limitations. (Code Civ. Proc., § 343; *Costa Serena, supra*, 175 Cal.App.4th at p. 1196.)

Although our conclusion that the statute of limitations bars any challenge to the validity of the Amendment resolves both appeals in this case, it does not resolve the complaint or cross-complaints. Therefore, the matter must be remanded for trial on all other issues raised in the complaint and cross-complaints.

## DISPOSITION

The judgment is reversed and the matter is remanded for trial. Schuman and Edmunds shall recover their costs on appeal.

Manella, J., and Suzukawa, J., concurred.