Filed 4/24/14  San Jacinto Z v. Stewart Title Guaranty CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SAN JACINTO Z, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>STEWART TITLE GUARANTY COMPANY,<br><br>    Defendant and Respondent. | G049208<br><br>(Super. Ct. No. RIC535367)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |

The opinion filed in this case on April 2, 2014 is hereby ORDERED modified as follows:

1.  After the sentence reading, "However, it reminds us that the second amended complaint contained a declaratory relief action . . . [,]" appearing as the second full sentence of the last paragraph appearing on page 12 of the opinion, add the following footnote:

"Stewart Title says San Jacinto Z, given its prior argument in the motion to expunge lis pendens it filed in the Pacific Horizon Action, is both collaterally and judicially estopped from arguing now that there was a potential for coverage under the title policy based on the declaratory relief cause of action and the deeds of trust of record. However, "'[c]ollateral estoppel . . . involves a second action between the same parties on

a different cause of action.'" (*Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860, 867.) Stewart Title was not a party to the Pacific Horizon Action. Moreover, this is not a case where we view San Jacinto Z's arguments made in the various lawsuits as playing fast and loose with the courts or perverting the judicial machinery so as to trigger the application of the doctrine of judicial estoppel. (See *Blix Street Records, Inc. v. Cassidy* (2010) 191 Cal.App.4th 39, 51.)"

   2. After the sentence reading, "To the extent the potential for coverage is based on the Pacific Horizon deeds of trust . . . [,]" appearing as the last sentence of the first paragraph appearing on page 13, add the following footnote:

   "Our holding that there was a triable issue of material fact arising out of deeds of trust of record disposes of both Stewart Title's arguments based on the insuring clause and its arguments based on title policy exception B.I.3 and exclusions 3(a) and 3(d), pertaining to matters not of record, defects created by the insured, and defects created after the date the title policy was issued."

   This modification does not effect a change in the judgment. The petition for rehearing filed on April 17, 2014 is DENIED.


             MOORE, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.

2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| SAN JACINTO Z, LLC,<br><br>   Plaintiff and Appellant,<br><br>      v.<br><br>STEWART TITLE GUARANTY<br>COMPANY,<br><br>   Defendant and Respondent. | G049208<br><br>(Super. Ct. No. RIC535367)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, Daniel A. Ottolia, Judge.  Reversed and remanded.

Shernoff Bidart Echeverria Bentley, Michael J. Bidart, Ricardo Echeverria, Steven Schuetze; The Ehrlich Law Firm and Jeffrey Isaac Ehrlich for Plaintiff and Appellant.

Sidley Austin, Howard J. Rubinroit, Joshua E. Anderson and Anand Singh for Defendant and Respondent.

\*          \*          \*

In this appeal, we address one action awkwardly plucked from a thicket of lawsuits. These lawsuits arise out of the purported misdeeds of a multitude of persons whose allegedly fraudulent activities have affected a single piece of real property. To compound an already snarled web, the various lawsuits have run sometimes concurrently and sometimes in different court systems altogether, giving rise to perhaps unexpected results. At the heart of the now isolated problem before us is the question of title insurance for one of the parties, with respect to the property in question.

Plaintiff San Jacinto Z, LLC (San Jacinto Z) sued defendant Stewart Title Guaranty Company (Stewart Title) over its failure to provide either a defense, or indemnification, as applicable, with respect to three lawsuits: *Pacific Horizon Financial, Inc. v. R.H. Construction, Inc.* (Case No. RIC414925) (Pacific Horizon Action); *Richard A. Marshack v. San Jacinto Z, LLC* (Adv. Case No. 06-01376 ES, Bankr. C.D. Cal.) (Royce Partners Adversary Proceeding); and *Eastern Municipal Water District v. San Jacinto Z, LLC* (Case No. RIC470147) (Eminent Domain Action). On appeal, San Jacinto Z claims the court erred in dismissing its lawsuit after granting summary judgment in favor of Stewart Title. We agree.

With respect to the Pacific Horizon Action, San Jacinto Z successfully raised triable issues of material fact as to whether there was a potential for coverage based on matters of record when the title policy was issued and as to whether the statute of limitations barred the lawsuit against Stewart Title. Similarly, with respect to the Eminent Domain Action, there were triable issues of material fact as to whether the claim was a covered claim and whether San Jacinto Z's failure to submit a proof of loss prejudiced Stewart Title. However, the court did not err with respect to its ruling in the Royce Partners Adversary Proceeding, inasmuch as the matter was essentially concluded by the time San Jacinto Z provided even constructive notice to Stewart Title. We reverse and remand.

# I

# FACTS

This litigation concerns a 31.5-acre piece of real property located in the City of San Jacinto, County of Riverside

Gregory Grantham and John Saba,[1] who already held a $4,500,000 judgment they desired to enforce, filed an action against various parties on October 24, 2002, to set aside certain allegedly fraudulent transfers of the property at issue in this case (*Grantham v. S.R.I. SFR, Inc.* (Case No. RIC383812)) (Grantham/Saba Action). On April 16 and April 30, 2003, Grantham and Saba recorded amended lis pendens with respect to the Grantham/Saba Action.

During the pendency of that action, Royce Partners, L.P. (Royce Partners), which was allegedly involved in the fraudulent transfers, borrowed money from Pacific Horizon Financial, Inc. (Pacific Horizon). As security for the loan(s), Royce Partners executed three deeds of trust against the property in favor of Pacific Horizon, which were recorded on August 1, 2003.

San Jacinto Z acquired the property in December 2003, from Grantham, Saba, R.H. Construction, Inc. and the Pacific Coast Trust. San Jacinto Z desired to build a residential development on the property.

In June 2004, San Jacinto Z filed a lawsuit against Pacific Horizon and others to quiet title to the property (*San Jacinto Z, LLC v. Pacific Horizon Financial, Inc.* (Case No. RIC414463)) (San Jacinto Z Action).

---

[1]     According to the September 18, 2003 operating agreement of San Jacinto Z, San Jacinto Z had three members: GS San Jacinto, LLC, whose managing members were Grantham and Saba; Continental San Jacinto, LLC, whose managing member was Robert E. Zuckerman; and Valley Circle Estates Realty, Co., whose president was also Zuckerman.

3

On June 25, 2004, Royce Partners filed for bankruptcy (*In re Royce Partners, L.P.* (Case No. SA 04-14084 ES, Bankr. C.D. Cal.)) (Royce Partners Bankruptcy).

Shortly thereafter, on July 8, 2004, Pacific Horizon filed the Pacific Horizon Action, seeking to quiet title against San Jacinto Z, Grantham, Saba, and others. Pacific Horizon did not record a lis pendens with respect to its lawsuit until several years later.

The San Jacinto Z Action and the Pacific Horizon Action were consolidated.[2]

Although Pacific Horizon had not been named as a defendant in the Grantham/Saba Action, it appeared in that lawsuit and argued that its interest in the property could be affected by the outcome thereof. On November 16, 2004, judgment was entered in the Grantham/Saba Action. The judgment identified Royce Partners as a defendant, held in favor of Grantham and Saba, and quieted title to the property in San Jacinto Z.[3] The judgment made reference to the amended lis pendens recorded by Grantham and Saba on April 16 and April 30, 2003, and held that any deeds of trust subsequently executed by Royce Partners or any other defendant were void.[4]

---

[2]       According to Stewart Title's August 22, 2007 denial of tender letter, the two actions were consolidated on September 23, 2004.

[3]       Judge E. Michael Kaiser ruled in that case. The parties refer to the Grantham/Saba Action as the "Kaiser Action" and refer to the judgment as the "Kaiser Judgment." We find these labels to be inappropriate, so we refer to the action and the judgment in question as the "Grantham/Saba Action" and the "Grantham/Saba Judgment" instead.

[4]       The judgment stated, inter alia: "Each grant deed and deed of trust which conveyed, transferred, or encumbered all or part of the San Jacinto Property, commencing after . . . September 6, 2002, and concluding with the transfer of title by Royce Industries, Inc. to Royce Partners, L.P. on April 30, 2003 were fraudulent transfers and encumbrances under the Uniform Fraudulent Transfer Act. . . . The fraudulent deeds and deeds of trust are hereby set aside, annulled and vacated, . . . as follows: [¶] a. The

4

Pacific Horizon moved to set aside the judgment in the Grantham/Saba Action, on the ground that it was an indispensable party that had not been joined, but the court denied the motion.

On March 10, 2005, San Jacinto Z obtained a title insurance policy from Stewart Title.

On May 24, 2006, the trustee in the Royce Partners Bankruptcy filed a complaint against San Jacinto Z, Grantham, Saba, Stephen Reeder, R.H. Construction, Inc., Selinda Lopez both individually and as trustee of the Pacific Coast Trust, and John Cruickshank, thereby commencing the Royce Partners Adversary Proceeding. The complaint stated 17 claims for relief, including, inter alia, claims for fraud, conspiracy, avoidance of fraudulent and/or preferential transfers, quiet title, and damages for willful violation of the automatic stay in bankruptcy.

Pacific Horizon filed first and second amended complaints in the Pacific Horizon Action on January 8 and April 16, 2007, respectively. The two amended complaints were substantially the same. In the second amended complaint, Pacific Horizon omitted the quiet title cause of action and asserted causes of action for equitable subordination, unjust enrichment, and declaratory relief instead.

On June 1, 2007, San Jacinto Z tendered to Stewart Title the San Jacinto Z Action and the defense of the second amended complaint in the Pacific Horizon Action. In its letter, it made mention of the Royce Partners Adversary Proceeding. On July 6, 2007, the Royce Partners Adversary Proceeding was dismissed with prejudice. On August 22, 2007, Stewart Title denied the tender of the Pacific Horizon Action.

---

Grant Deed executed by Royce Industries, Inc. . . . , as Grantor, in favor of Royce Partners, L.P., as Grantee, dated April 30, 2003, . . . is set aside, annulled and declared void; [¶] . . . [¶] g. Any other deeds or deeds of trust, . . . executed by any of the defendants purportedly encumbering or transferring the San Jacinto Property, recorded in any jurisdiction, after the date of Plaintiffs' recording of their amended lis pendens are set aside, annulled and declared void."

5

Judgment was entered in the consolidated San Jacinto Z and Pacific Horizon Actions on May 20, 2009. The judgment provided that San Jacinto Z take nothing on its complaint against Pacific Horizon in the San Jacinto Z Action.

In the Pacific Horizon Action, the judgment granted to Pacific Horizon equitable subrogation with respect to the numerous liens retired by the proceeds of its loan funded August 1, 2003. The retired liens were liens recorded from July 19, 2001 through August 1, 2003, which, together with attorney fees, totaled $13,168,854.63. The judgment held that, based on equitable subrogation, the lien rights of Pacific Horizon, in that amount, were senior to any interest of San Jacinto Z in the property. However, the court held that Pacific Horizon was not entitled to a money judgment against San Jacinto Z on the theory of unjust enrichment.

On September 1, 2009, San Jacinto Z filed its lawsuit against Stewart Title for bad faith, breach of contract, and declaratory relief. In its first amended complaint, San Jacinto Z alleged that Stewart Title wrongfully failed to defend and indemnify it with respect to the Pacific Horizon Action, the Royce Partners Adversary Proceeding, and the Eminent Domain Action, which we shall describe at a later point.

Stewart Title filed a motion for summary judgment with respect to San Jacinto Z's first amended complaint. The court granted summary judgment in favor of Stewart Title and entered a judgment of dismissal. San Jacinto Z appeals.[5]

---

[5] In the underlying lawsuit, San Jacinto Z also sued Stewart Title of California, Inc. and Stewart Information Services Corporation. The summary judgment motions of those two entities were also granted. In its notice of appeal, San Jacinto Z challenged the judgment in favor of each defendant. However, in its briefing on appeal, San Jacinto Z makes no argument concerning the judgment in favor of Stewart Title of California, Inc. and Stewart Information Services Corporation. Consequently, any challenge with respect to the judgment in their favor is deemed waived. (*G.R. v. Intelligator* (2010) 185 Cal.App.4th 606, 610, fn. 1.)

## II

## DISCUSSION

*A. SUMMARY JUDGMENT REVIEW:*

"Under summary judgment law, any party to an action, whether plaintiff or defendant, 'may move' the court 'for summary judgment' in his [or her] favor on a cause of action . . . or defense (Code Civ. Proc., § 437c, subd. (a))—a plaintiff 'contend[ing]. . . that there is no defense to the action,' a defendant 'contend[ing] that the action has no merit' (*ibid.*). The court must 'grant[]' the 'motion' 'if all the papers submitted show' that 'there is no triable issue as to any material fact' (*id.*, § 437c, subd. (c))—that is, there is no issue requiring a trial as to any fact that is necessary under the pleadings and, ultimately, the law [citations]—and that the 'moving party is entitled to a judgment as a matter of law' (Code Civ. Proc., § 437c, subd. (c))." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)

"[I]n moving for summary judgment, a 'defendant . . . has met' his [or her] 'burden of showing that a cause of action has no merit if' he [or she] 'has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. . . .' (Code Civ. Proc., § 437c, subd. (*o*)(2).)"[6] (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 849.)

On review of a summary judgment, we "examine the record de novo and independently determine whether [the] decision is correct. [Citation.]" (*Colarossi v. Coty US Inc.* (2002) 97 Cal.App.4th 1142, 1149.)

---

[6] See now Code of Civil Procedure section 437c, subdivision (p)(2).

7

*B.  PACIFIC HORIZON ACTION:*

*(1)  Pleadings and Ruling in Action against Stewart Title—*

In its first amended complaint, San Jacinto Z alleged that after the Grantham/Saba Judgment was entered on November 16, 2004, it sought financing to develop the property.  In order to obtain financing, it needed a title insurance policy.  Alliance Title wanted $10,000 in fees just to review title on the property.

San Jacinto Z further alleged that its attorney contacted Stewart Title, and disclosed that the property had been involved in substantial litigation and that Alliance Title ultimately had declined to issue a title policy to San Jacinto Z.  With this information in hand, Stewart Title nevertheless chose to insure title in San Jacinto Z, effective March 10, 2005.

San Jacinto Z recited that it tendered the defense of the Pacific Horizon Action to Stewart Title on June 1, 2007 and Stewart Title refused the tender on August 22, 2007.  San Jacinto Z thereafter agreed to submit the Pacific Horizon Action to arbitration.  The arbitrator imposed a lien in the amount of $13,168,854.63 on the property, in favor of Pacific Horizon.

In its first amended complaint, San Jacinto Z further asserted that Stewart Title acted in bad faith in denying a defense of the Pacific Horizon Action and breached the terms of the title policy by both refusing to defend the lawsuit and refusing to indemnify it with respect to the arbitration award.  In addition, San Jacinto Z sought declaratory relief with respect to its rights against Stewart Title.

In its motion for summary judgment, Stewart Title argued it had no duty to defend the Pacific Horizon Action because it was not covered by the title policy and San Jacinto Z's action against it was time-barred.

In its opposition to the motion, San Jacinto Z emphasized that Stewart Title knowingly chose to issue a title policy that did not exclude coverage with respect to claims based on the Pacific Horizon deeds of trust.  San Jacinto Z contended that the title

policy covered its claim based on the Pacific Horizon Action because it arose out of deeds of trust of record at the time the title policy was issued. It also asserted that, Pacific Horizon's allegations of tortious conduct notwithstanding, Stewart Title still had a duty to defend because there was a potential for coverage based on claims arising out of the recorded deeds of trust. In addition, San Jacinto Z argued that its action against Stewart Title was timely because the statute of limitations began to run only on January 8, 2007, when Pacific Horizon filed its first amended complaint in the Pacific Horizon Action, or in the alternative, that Stewart Title received constructive tender of the claim on the date the title policy was issued and the statute of limitations was equitably tolled while San Jacinto Z litigated the matter.

The trial court ruled in favor of Stewart Title for a number of reasons, including: (1) the claim based on the Pacific Horizon second amended complaint was not covered by the title policy insuring clause; (2) the claim fell within various policy exclusions and exceptions; and (3) the lawsuit was barred by the statute of limitations. We hold that the trial court erred in granting summary judgment, for reasons we shall show.

*(2) Allegations of Pacific Horizon's Second Amended Complaint—*

In its second amended complaint, Pacific Horizon alleged that the November 16, 2004 judgment in the Grantham/Saba Action, as well as a judgment in another lawsuit filed by Grantham and Saba, "quieted title to the Property in Defendants Grantham, Saba and/or San Jacinto." This being the case, the second amended complaint of Pacific Horizon no longer contained the quiet title cause of action that had been asserted in the original complaint. Instead, the second amended complaint asserted causes of action for equitable subordination, unjust enrichment, and declaratory relief.

Pacific Horizon alleged that Grantham and Saba had colluded with San Jacinto Z to unlawfully take the property from Royce Partners. More specifically, it alleged that on June 27, 2003, Grantham, who was aware that Pacific Horizon was

9

potentially refinancing certain loans on the property, wrote to counsel for Royce Partners and represented that he intended to file a petition for a writ of mandate before July 16, 2003 to challenge a June 26, 2003 order expunging certain lis pendens on the property; however, Grantham did not in fact do so by the date represented. Then, on June 30, 2003, Stephen Reeder, a stranger to Royce Partners who had no authority to act on its behalf, executed a deed purporting to convey title from Royce Partners to defendants Grantham, Saba, R.H. Construction, Inc. and Lopez and thereby fraudulently divested Royce Partners of title to the property.

However, believing Royce Partners to be the record owner of the property, Pacific Horizon, on August 1, 2003, funded a $4.425 million loan to Royce Partners for the purpose of retiring certain preexisting debt on the property. Three days later, Pacific Horizon received a letter from Grantham stating that he had filed his challenge to the expungement order on July 18, 2003. The Court of Appeal later overturned the expungement order, thereby restoring the lis pendens.

On December 31, 2003, defendants Grantham, Saba, R.H. Construction, Inc. and Lopez deeded their interests in the property to San Jacinto Z.

Thereafter, according to Pacific Horizon, San Jacinto Z and Cruickshank further fraudulently divested Royce Partners of title to the property through a series of deeds executed between May 18, 2004 and July 8, 2004.

Pacific Horizon also alleged that Royce Partners filed for bankruptcy on June 25, 2004, thereby staying Pacific Horizon's foreclosure proceeding against it. While Pacific Horizon seemed to acknowledge that the November 16, 2004 judgment in the Grantham/Saba Action quieted title to the property, it also alleged that the judgment was entered in violation of the bankruptcy stay.

Notably, Pacific Horizon alleged: "Because this Court cannot directly remedy the [Bankruptcy Code] violations, Plaintiff must pursue its causes of action in this Court to redress the fraudulent, inequitable and unjust conduct of defendants

10

Grantham, Saba and San Jacinto, who have worked in concert unfairly and unlawfully to take the Property from Royce Partners while ignoring any obligations to Plaintiffs as a bona fide lender on, and secured creditor in, the Property."

Pacific Horizon sought equitable subrogation because, when it loaned the money to Royce Partners to pay off existing debts on the property, it believed the Pacific Horizon deeds of trust would have first priority. It claimed that "[u]nder the doctrine of equitable subrogation, [it was] entitled to the rights and payments owed to the lenders whose loans were paid off by the proceeds of" its loan to Royce Partners. It also sought a constructive trust on the property in connection with the equitable subrogation. In addition, Pacific Horizon claimed that its satisfaction of the preexisting debts on the property had the effect of unjustly enriching San Jacinto Z by an amount exceeding $4,425,000, for which it sought compensatory damages.

In its cause of action for declaratory relief, Pacific Horizon incorporated by reference its preceding allegations and stated simply that "[a] judicial determination [was] necessary and appropriate . . . to determine the parties' respective rights, duties and liabilities with respect to the Property." In its prayer for relief with respect to that cause of action, Pacific Horizon requested a judgment declaring it to have priority interests in the property pursuant to its three deeds of trust recorded August 1, 2003.

*(3) Coverage Analysis—*

In its motion for summary judgment, Stewart Title argued, inter alia, that when Pacific Horizon filed its second amended complaint, it abandoned its quiet title action based on the priority of its deeds of trust and instead based its causes of action on tortious conduct not covered by the title policy.

The insuring clause of the title policy, as relevant here, is the same as the one at issue in *Liberty National Enterprises, L.P. v. Chicago Title Ins. Co.* (2013) 217 Cal.App.4th 62, 69. "In pertinent part, the policy provides that [the title company] insures [the insured] against loss or damage, as of the date of the policy, 'by reason of:

11

[¶] 1.  Title to the estate or interest described in Schedule A being vested other than as stated therein; [or] [¶] 2.  Any defect in or lien or encumbrance on the title.'" (*Ibid.*)  The court in *Liberty National* held that the insuring clause did not cover the lawsuit at issue there, because the lawsuit "did not allege defective title, but tortious conduct in the manner in which [the insured] acquired title.  There was no potential for coverage and therefore no duty to defend . . . ." (*Id.* at p. 81.)  It emphasized that "title insurance does not protect against alleged tortious conduct by the insured . . . ." (*Id.* at p. 77.)

In the matter before us, Pacific Horizon alleged title defects in its original complaint for quiet title.  However, in its second amended complaint, Pacific Horizon omitted a quiet title cause of action and appeared to concede that the Grantham/Saba Judgment had quieted title in San Jacinto Z.  It said that it brought its second amended complaint to redress certain fraudulent and otherwise inequitable conduct.

On appeal, San Jacinto Z "fully admits that claims arising purely from its conduct or Pacific Horizon's attempts to obtain an equitable lien are *not* covered."  However, it reminds us that the second amended complaint contained a declaratory relief action based on the facts alleged, including the facts regarding Pacific Horizon's recorded deeds of trust.  Indeed, we observe the prayer for relief with respect to the declaratory relief cause of action specifically requested a judgment declaring Pacific Horizon's interest in the property pursuant to its three deeds of trust recorded August 1, 2003 "as valid and first against all adverse claims, rights, titles, estates, liens or interests in or to said property asserted or held by Defendants or any of them."  In other words, while one portion of the second amended complaint appeared to concede that Pacific Horizon was pursuing only claims based on tortious conduct, another portion thereof seemed to indicate that Pacific Horizon was continuing to pursue the vitality of its recorded deeds of trust.

San Jacinto Z emphasizes that if there is even a potential that the claim is covered, the insurer has a duty to defend. "'However, "'where there is no possibility of coverage, there is no duty to defend. . . .'"' [Citation.]'" (*Liberty National Enterprises, L.P. v. Chicago Title Ins. Co.*, *supra*, 217 Cal.App.4th at p. 76.) San Jacinto Z says there was a potential for coverage based on the possibility that Pacific Horizon could prevail on the enforceability of its deeds of trust, even though Pacific Horizon also alleged that San Jacinto engaged in fraudulent and inequitable conduct. To the extent the potential for coverage is based on the Pacific Horizon deeds of trust, however, a statute of limitations issue arises.

### (4) Statute of Limitations Analysis—

#### (a) Code of Civil Procedure section 339

The statute of limitations at issue in this case is found in Code of Civil Procedure section 339. Section 339 provides that a lawsuit based upon a title insurance policy must be brought within two years and that a cause of action based upon such a policy "shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party thereunder."

#### (b) Accrual of cause of action

In its opening brief, San Jacinto Z concedes that the Pacific Horizon second amended complaint "repeated the factual allegations that gave rise to its 2004 complaint for 'quiet title.'" So, San Jacinto Z basically admits that Pacific Horizon's quiet title claim has been litigated since 2004. Yet it did not tender the defense of the Pacific Horizon Action to Stewart Title until June 2007.

Stewart Title argued in its motion for summary judgment that San Jacinto Z's action against it was time-barred, under Code of Civil Procedure section 339. Stewart Title asserted that San Jacinto Z had discovered the potential loss or damage from the Pacific Horizon Action no later than August 20, 2004, when San Jacinto Z answered the quiet title complaint. However, Stewart Title conceded that San Jacinto Z's

13

claim against it arising out of the quiet title action could not accrue before March 10, 2005—the issuance date of the title policy. Stewart Title argued that, under the two-year statute of limitations set forth in section 339, San Jacinto Z had only until March 10, 2007 to file its bad faith action. Since San Jacinto Z did not file the action until September 1, 2009, it was time-barred.

In opposition, San Jacinto Z stated: "By the time the Policy was issued, San Jacinto had already obtained the [Grantham/Saba] Judgment, so it believed (incorrectly) that Pacific Horizon's deeds of trust were a nonissue. San Jacinto only realized that a claim still potentially existed on January 8, 2007 when Pacific Horizon filed its [first amended complaint]."

In other words, Pacific Horizon's quiet title action had been pending since 2004, but San Jacinto Z only realized it could suffer a loss from that claim when, in 2007, Pacific Horizon stated in its amended complaint that the Grantham/Saba Judgment had quieted title so it would proceed instead on fraud and tort claims. San Jacinto Z's argument is a non sequitur.[7]

Clearly, Stewart Title is correct that San Jacinto Z knew of the potential loss from Pacific Horizon's quiet title claim no later than August 20, 2004, when San Jacinto Z filed its answer. It's just that, as San Jacinto Z concedes, it "incorrectly" believed that Pacific Horizon's claim was no threat after the Grantham/Saba Judgment was entered. When Pacific Horizon filed its amended complaint, San Jacinto Z did not learn for the first time that Pacific Horizon had a claim based on its deeds of trust. If there was anything San Jacinto Z then learned for the first time, it was that Pacific Horizon doubted its ability to prevail on its quiet title claim, so it levied claims based on

---

[7] San Jacinto Z's assertion is also hard to reconcile with the dockets in the consolidated San Jacinto Z and Pacific Horizon Actions, which span nearly 100 pages and show continuous activity in the litigation from inception in 2004 through judgment in 2009.

14

fraud and other tortious activity instead. The filing of the first amended complaint simply cannot be fairly construed as the date San Jacinto Z discovered its potential loss based on Pacific Horizon's quiet title claims.

However, it would be nonsensical, and contrary to case law, to construe the two-year limitations period to run from August 20, 2004, inasmuch as San Jacinto Z was not then insured. (*Smeaton v. Fidelity Nat. Title* (1999) 72 Cal.App.4th 1000.) Even so, San Jacinto Z could have tendered the litigation to Stewart Title as early as March 10, 2005, when the title policy was issued.

### (c) Constructive tender and tolling

As to that, San Jacinto Z argued in its opposition that the claim was constructively tendered to Stewart Title on the date the policy was issued, inasmuch as Stewart Title was aware of the litigation before the title policy was issued, and that "because [it] knew about the [Pacific Horizon] Action, the statute of limitations was equitably tolled while San Jacinto attempted to leverage the [Grantham/Saba] Judgment against Pacific Horizon." (*OneBeacon America Ins. Co. v. Fireman's Fund Ins. Co.* (2009) 175 Cal.App.4th 183, 200 [tender to insurer can be constructive]; *Stalberg v. Western Title Ins. Co.* (1994) 27 Cal.App.4th 925, 932-934 [limitations period can be equitably tolled during pursuit of litigation].)

San Jacinto Z essentially argued, as it clarifies in its reply brief on appeal, that Stewart Title agreed to insure over both Pacific Horizon's deeds of trust and the pending litigation. (See *Southland Title Corp. v. Superior Court* (1991) 231 Cal.App.3d 530, 538 [title insurer may choose to insure over title defect based on underwriting decision].) The logical extension of this argument is that for the payment of a premium Stewart Title: (1) took the risk that the Grantham/Saba Judgment would not put an end to Pacific Horizon's claims; (2) agreed to defend San Jacinto Z in the litigation if and when requested to do so, and had the opportunity to protect itself by undertaking the defense of the Pacific Horizon Action from the day the title policy was issued if it so chose; and (3)

15

agreed to indemnify San Jacinto Z for any judgment that might be entered against it based on the Pacific Horizon deeds of trust or the Pacific Horizon Action. Were that the agreement of the parties, the lawsuit against Stewart Title would not necessarily be time-barred if the statute of limitations were tolled either (1) during the period of time that San Jacinto Z defended the Pacific Horizon Action on its own (*Stalberg v. Western Title Ins. Co.*, *supra*, 27 Cal.App.4th at pp. 932-934 [equitable tolling during pursuit of litigation]), or (2) until judgment was entered in the Pacific Horizon Action and the amount of San Jacinto Z's loss was determined (*Lambert v. Commonwealth Land Title Ins. Co.* (1991) 53 Cal.3d 1072, 1080 [tolling until final judgment in underlying action]).[8]

### *(d) Triable issue of material fact*

Whether a statute of limitations has run is ordinarily a question of fact. (*Lee v. Fidelity National Title Ins. Co.* (2010) 188 Cal.App.4th 583, 600.) Furthermore, a title insurance policy """"""*must be construed so as to give the insured the protection which he reasonably had a right to expect, . . . .*"" (Original italics.) [Citation.]"""" (*Id.* at p. 595.)

The question before us on appeal is whether San Jacinto Z provided enough evidence to raise a triable issue of material fact as to whether Stewart Title actually agreed to insure over the title defects in the manner San Jacinto Z alleges and, if so, whether San Jacinto Z's lawsuit against Stewart Title was timely filed. The evidence provided included copies of: (1) a declaration of Robert Zuckerman; (2) a letter from Attorney Sue Balistocky to Stewart Title; (3) an Alliance Title preliminary report; (4) a Stewart Title Company internal report; and (5) the title insurance policy Stewart Title issued to San Jacinto Z.

---

[8] Under this theory, *65 Butterfield v. Chicago Title Ins. Co.* (1999) 70 Cal.App.4th 1047 and *Tabachnick v. Ticor Title Ins. Co.* (1994) 24 Cal.App.4th 70 are distinguishable because in those cases there was no allegation that the title insurer was fully aware of the pending litigation at the time the title insurance policy was issued and indeed agreed to assume the risk of an adverse outcome.

16

Zuckerman described himself as the managing member of San Jacinto Z. He declared that once the Grantham/Saba Judgment had been entered, San Jacinto Z believed that title had been quieted in its favor and the title issues affecting the property had been resolved. So, in order to develop the property, San Jacinto Z sought title insurance from Alliance Title. Although Alliance Title issued a preliminary report, it demanded $10,000 just to perform a further review of the public records and litigation affecting the property.

Zuckerman further declared that counsel for San Jacinto Z, Attorney Sue Balistocky, thereafter contacted Stewart Title about title insurance and that San Jacinto Z provided Stewart Title with a copy of the Alliance Title report. Zuckerman continued on to state that Stewart Title agreed to issue a title policy insuring title in San Jacinto Z without exception for the Pacific Horizon deeds of trust. San Jacinto Z paid the required premium and the title policy was issued effective March 10, 2005.

In her January 27, 2005 letter to Collyer Church of Stewart Title, Attorney Balistocky asked if he "could work [his] magic and have Stewart Title issue an owner's policy . . . forthwith . . . ." She explained: "The subject property was involved in SUBSTANTIAL litigation and fraudulent conveyances as reflected in the Alliance Title Company's preliminary title report which I will try to send you once we speak . . . ." Attorney Balistocky opined that "after much litigation, and two summary judgment motions, these matters have been resolved" and that "a superior court judge ruled in a summary judgment motion that title to this property resided with our clients." Nonetheless, she said, Alliance Title had changed its mind about issuing title insurance to her client. Attorney Balistocky further said that there was an "immediate crisis [in] that the construction loan [was] supposed to fund in less than 2 weeks and it is imperative that owner's and construction policies be issued forthwith."

17

The preliminary report that Zuckerman said was provided to Stewart Title was dated September 9, 2004, prior to the date of the Grantham/Saba Judgment, and showed that title to the property was vested in Royce Partners. It identified the lis pendens filed in the San Jacinto Z Action as an exception to title, and made reference to the San Jacinto Z Action itself. That lis pendens was also listed on an internal report of Stewart Title Company dated January 31, 2005.[9]

The title policy Stewart Title issued on March 10, 2005 showed the property vested in San Jacinto Z, subject to exceptions to title listed on over 30 pages. Neither the Pacific Horizon deeds of trust nor the San Jacinto Z lis pendens recorded in the San Jacinto Z Action were listed among the exceptions to title.

The foregoing evidence was sufficient to raise a triable issue of material fact as to whether San Jacinto Z disclosed to Stewart Title the existence of the San Jacinto Z Action, including the Pacific Horizon Action with which it had been consolidated, and requested that Stewart Title insure around the Pacific Horizon deeds of trust and the Pacific Horizon Action, and whether the issuance of the title policy without reference to either the San Jacinto Z lis pendens or the Pacific Horizon deeds of trust indicated an agreement on the part of Stewart Title to defend the Pacific Horizon Action upon request and to indemnify San Jacinto Z with respect to an adverse judgment, arising

_____

[9] At oral argument, counsel for Stewart Title acknowledged that there was a lis pendens of record in the San Jacinto Z Action, with which the Pacific Horizon Action was consolidated, when the title insurance policy was issued. However, he said Stewart Title had no obligation to go beyond the lis pendens, look at the docket of the case, and find out it was consolidated with another case. However, "[a] title insurer issues its policies on the basis of, and in reliance on, its own investigation into recorded instruments, which should impart constructive notice. [Citation.] . . . To a large extent, therefore, the title insurer is able to control the degree of risk it undertakes in issuing a policy by performing its own investigation beforehand. [Citation.]" (*Liberty National Enterprises, L.P. v. Chicago Title Ins. Co.*, *supra*, 217 Cal.App.4th at p. 75.) To the extent that Stewart Title chose to issue title insurance without investigating the nature of the pending litigation, it was perhaps a little cavalier in doing so, and thereby exposed itself to risk.

18

out of the Pacific Horizon deeds of trust or the Pacific Horizon Action, entered at any time in the future. In the context of this summary judgment matter, it is not for us to guess the likelihood that Stewart Title made that agreement or to comment on the wisdom of such an agreement if made. We only state that the evidence San Jacinto Z provided is sufficient to defeat Stewart Title's motion for summary judgment.

C. *ROYCE PARTNERS ADVERSARY PROCEEDING:*

*(1) Pleadings and Ruling in Action against Stewart Title—*

In its first amended complaint against Stewart Title, San Jacinto Z alleged that it incurred approximately $400,000 in legal fees and costs in defending the Royce Partners Adversary Proceeding. It further alleged that it tendered the defense of the proceeding to Stewart Title on June 1, 2007 and that Stewart Title denied the tender in the same August 22, 2007 letter in which it denied the tender of the Pacific Horizon Action.

In granting summary judgment, the trial court held that Stewart Title had no duty to defend the Royce Partners Adversary Proceeding for many reasons, including: (1) San Jacinto Z never tendered the action to Stewart Title; (2) San Jacinto Z never provided a proof of loss to Stewart Title; (3) the insuring clause of the title policy did not cover the Royce Partners Adversary Proceeding; (4) coverage was excluded and/or excepted by various different provisions of the title policy; and (5) any cause of action against Stewart Title was barred by the statute of limitations.

We need not address each one of these holdings. Suffice it to say, even if we construe the June 1, 2007 letter as constructive notice to Stewart Title of the Royce Partners Adversary Proceeding, Stewart Title had no duty to defend because investigation would have shown that the litigation had concluded already. (*OneBeacon America Ins. Co. v. Fireman's Fund Ins. Co.*, *supra*, 175 Cal.App.4th at p. 200.)

19

*(2) Background—*

As we have stated, the bankruptcy trustee filed the Royce Partners Adversary Proceeding on May 24, 2006. The trustee's complaint, seeking to quiet title, alleged, inter alia, that Royce Partners had superior title to that of San Jacinto Z. The trustee asserted that Royce Partners held title to the property when it obtained a $4,000,000 loan from Pacific Horizon, as evidenced by promissory notes dated June 20, 2003, secured by deeds of trust recorded August 1, 2003. San Jacinto answered the complaint on December 8, 2006.

In the June 1, 2007 tender letter, counsel for San Jacinto Z described the San Jacinto Z Action and the Pacific Horizon Action. He then stated: "On behalf of San Jacinto Z, we hereby tender the San Jacinto Z Complaint and the [Pacific Horizon] Second Amended Complaint filed in the above actions to Stewart Title for defense and indemnity."

After two full paragraphs of discussion of the San Jacinto Z Action and the Pacific Horizon Action, counsel said: "San Jacinto Z also has been named as a defendant in a related adversary proceeding in the bankruptcy proceeding captioned *In re Royce Partners* Bankruptcy Proceeding, U.S. Bankruptcy Court, Case No. SA-04-14084 . . . . Recently, Judge Smith granted San Jacinto Z's motion for summary judgment. The proposed order has been submitted to Judge Smith. . . . San Jacinto Z filed . . . a motion to dismiss the bankruptcy case. Since that motion was filed, the Bankruptcy Trustee and The United States Trustee [*sic*] has agreed to dismiss the entire bankruptcy action. At the hearing on San Jacinto Z's motion today, May 31, 2007, Judge Smith granted San Jacinto Z's, the Bankruptcy Trustee's and the United States Trustee's stipulation for an order dismissing the bankruptcy with prejudice. The proposed stipulated order has been submitted to the Court."

20

In a separate paragraph concluding the letter, counsel stated: "Accordingly, we ask for your prompt evaluation and response." About a month later, on July 6, 2007, the Royce Partners Adversary Proceeding was dismissed with prejudice.

On August 22, 2007, Stewart Title, in response to the June 1, 2007 letter, sent San Jacinto Z an 18-page coverage analysis of the Pacific Horizon Action. San Jacinto Z filed its lawsuit against Stewart Title, at issue in this appeal, on September 1, 2009.

*(3) Analysis re Duty to Defend—*

In its motion for summary judgment, Stewart Title asserted it had no duty to defend the Royce Partners Adversary Proceeding for several reasons. The first reason was that San Jacinto Z had never tendered the defense of that action. Stewart Title maintained that the June 1, 2007 letter, in which San Jacinto Z made mention of the Royce Partners Adversary Proceeding, was only a tender of the Pacific Horizon Action. It cited *North Star Reinsurance Corp. v. Superior Court* (1992) 10 Cal.App.4th 1815, for the proposition that "the duty . . . to defend had never arisen because [the insured] had never tendered the defense . . . . [Citation.]" (*Id.* at p. 1823.) We observe *North Star Reinsurance Corp.* continues on to state: "'The duty [to defend] commences upon tender of the defense, and continues until the underlying lawsuit is concluded. [Citation.]'.[]" (*Ibid.*) We further observe that the lawsuit, here the Royce Partners Adversary Proceeding, was dismissed with prejudice on July 6, 2007.

In its opposition to the motion for summary judgment, San Jacinto Z said Stewart Title had a duty to defend all of the lawsuits at issue because they arose out of deeds of trust recorded prior to the issuance date of the title policy and because title policy exclusion 3(a) was inapplicable. It did not, however, respond to the argument that Stewart Title had no duty to defend the Royce Partners Adversary Proceeding because San Jacinto Z had never tendered the defense of that matter.

21

San Jacinto Z only tangentially touched upon the issue in its discussion of the statute of limitations. It said Stewart Title's argument that the statute of limitations had run was predicated on the notion that the June 1, 2007 letter did not constitute a tender of defense. San Jacinto Z then cited *OneBeacon America Ins. Co. v. Fireman's Fund Ins. Co.*, *supra*, 175 Cal.App.4th 183 for the proposition that a duty to defend can arise upon constructive notice and that an insurer's obligation for defense costs arises where the insurer's diligent investigation would have revealed potential exposure and provided the insurer an opportunity to participate in the defense of the litigation.

San Jacinto Z continued its discussion of the statute of limitations by stating that, under *OneBeacon America Ins. Co. v. Fireman's Fund Ins. Co.*, *supra*, 175 Cal.App.4th 183, the June 1, 2007 letter constituted constructive notice of the litigation and the statute of limitations was thereafter tolled (impliedly indefinitely) because Stewart Title did not respond to the portion of the June 1, 2007 letter addressing the Royce Partners Adversary Proceeding.[10] In concluding its argument on the statute of limitations, San Jacinto Z stated: "By denying liability on other grounds, Stewart Title has waived any claim that San Jacinto forfeited its right to defense or indemnity by failing to provide earlier notice of the litigation."

There are a couple of reasons why this statement did not serve to raise a triable issue of material fact as to whether or not Stewart Title had a duty to defend the Royce Partners Adversary Proceeding. First, the statement about Stewart Title's denial of liability is contradictory to the parties' undisputed material facts. In their undisputed material facts, San Jacinto Z and Stewart Title agreed that Stewart Title had denied the

---

[10] In its first amended complaint, to which the motion for summary judgment pertains, San Jacinto Z alleged that Stewart Title, in its August 22, 2007 coverage letter, denied the tender not only of the Pacific Horizon Action but also of the Royce Partners Adversary Proceeding. However, after Stewart Title filed is motion for summary judgment, San Jacinto Z changed its tune and alleged in its opposition and in its second amended complaint that Stewart Title never denied the tender.

22

tender with respect to the Pacific Horizon Action but had *not* opined as to coverage with respect to the Royce Partners Adversary Proceeding. Indeed, in its additional facts and evidence in opposition to summary judgment, San Jacinto Z, as its material fact No. 47, stated: "On August [22], 2007 Stewart Title responded with a letter denying the tender of the PHF Action, but it did not address the Royce Action."

Second, the two cases San Jacinto Z cited in support of its waiver argument were inapposite. It cited *CNA Casualty of California v. Seaboard Surety Co.* (1986) 176 Cal.App.3d 598 and *Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865. In *CNA Casualty of California v. Seaboard Surety Co.*, *supra*, 176 Cal.App.3d 598, the insured tendered the defense of an amended complaint to the insurer about four months after it was filed and the insurer denied the tender. Judgment was entered against the insured nearly three years later. (*Id.* at p. 604.) In a subsequent lawsuit, the insurer was held liable to share in the *posttender* costs of defense, inasmuch as the insurer had adequate notice of the litigation and an opportunity to prevent substantial prejudice to its interests. (*Id.* at pp. 604-605, 617.) In the matter before us, in contrast, the insurer did not have notice of the litigation or an opportunity to prevent substantial prejudice to its interests and it was being asked to cover "pre-tender" costs, not posttender costs.

In *Clemmer v. Hartford Insurance Co.*, *supra*, 22 Cal.3d 865, a third party obtained a judgment against the insured in a wrongful death action and then filed suit against the insurer for satisfaction of the judgment. (*Id.* at p. 871.) The insurer had learned about the case the day before the hearing on a motion for entry of default against the insured and it disclaimed coverage about two weeks thereafter. (*Id.* at p. 881.) The court held the insurer was liable to satisfy the judgment. It observed that the right of a third party to sue an insurer for satisfaction of a judgment was established by statute and that the insurer could not defend itself on the basis of the insured's failure to comply with a notice provision unless it could demonstrate prejudice. (*Id.* at p. 882.) In the matter before us, however, we are not dealing with the rights of a third party to collect on a

23

judgment against the insured. Moreover, San Jacinto Z did not state why the rule regarding the insurer's obligation to satisfy a judgment against an insured should apply to an insurer's obligation to reimburse an insured for attorney fees it incurred without notice to the insurer and without giving the insurer an opportunity to participate in the litigation.

So, even if we construe San Jacinto Z's June 1, 2007 letter to Stewart Title as constructive notice of the Royce Partners Adversary Proceeding, we conclude that San Jacinto Z failed to raise a triable issue of material fact as to whether Stewart Title had a duty to defend. "[A]lthough the duty to defend ordinarily arises after receipt of an actual tender of defense, it may arise upon receipt of 'constructive notice' of the contractual duty to defend. [Citation.]" (*OneBeacon America Ins. Co. v. Fireman's Fund Ins. Co.*, *supra*, 175 Cal.App.4th at p. 200.) After receiving notice of the litigation, whether formal or constructive, "an insurer's obligation . . . for defense costs arises where . . . a diligent inquiry by the insurer would reveal the potential exposure to a claim . . . , thus providing the insurer the opportunity for investigation and participation in the defense in the underlying litigation." (*Id.* at p. 203.) In the matter before us, had Stewart Title investigated the matter, it would have learned that the Royce Partners Adversary Proceeding had been dismissed with prejudice on July 6, 2007.

In short, Stewart Title would have learned that there was no remaining opportunity to participate in the defense of the underlying action and, indeed, that there was no duty to defend. This is so because the duty to defend terminates when the underlying lawsuit is concluded. (*OneBeacon America Ins. Co. v. Fireman's Fund Ins. Co.*, *supra*, 175 Cal.App.4th at p. 200.) And, "when there is no duty to defend under the terms of an insurance policy, there can be no action for breach of the implied covenant of good faith and fair dealing. [Citation.]" (*Liberty National Enterprises, L.P. v. Chicago Title Ins. Co.*, *supra*, 217 Cal.App.4th at p. 81.)

*(4) Analysis re "Pre-tender" Attorney Fees—*

On appeal, San Jacinto Z argues that even though the Royce Partners Adversary Proceeding had concluded by the time San Jacinto Z mentioned it to Stewart Title, such that Stewart Title arguably was not required to *defend* the litigation, it was nonetheless obligated to reimburse San Jacinto Z for its "pre-tender" defense costs based on section 4(a) of the title policy. However, San Jacinto Z did not make this argument in opposition to the motion for summary judgment.

We generally do not consider arguments that were not raised in the trial court and this rule applies in the summary judgment context as well as any other. (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 676.) "'Thus, possible theories that were not fully developed or factually presented to the trial court cannot create a "triable issue" on appeal.' [Citation.]" (*Ibid.*) However, even were we to consider San Jacinto Z's new argument, as involving the construction of the title policy as a matter of law based on undisputed facts, we would arrive at the same result.[11]

In arguing its point about pre-tender defense costs, San Jacinto Z cites the last sentence of title policy section 4(a) in isolation. We agree that section 4 (a) of the title policy resolves the question, but we decline to read the last sentence in isolation.

Section 4(a) provides in pertinent part: "*Upon written request by an insured . . . , the Company, at its own cost and without unreasonable delay, shall provide for the defense of such insured in litigation in which any third party asserts a claim*

_____

[11]      We will not address San Jacinto Z's newest argument that it is seeking posttender attorney fees, for two reasons. First, the argument most certainly is not based on undisputed facts, and indeed, the suggestion that San Jacinto Z incurred fees making a June 22, 2007 motion for summary judgment appears to be completely inconsistent with both the bankruptcy court docket upon which San Jacinto Z apparently relies and the recitals contained in its own June 1, 2007 letter. Second, it is raised for the first time in its reply brief and we will not consider a matter raised for the first time in a reply brief. (*Schubert v. Reynolds* (2002) 95 Cal.App.4th 100, 108.)

25

adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. *The Company shall have the right to select counsel of its choice* . . . to represent the insured as to those stated causes of action *and shall not be liable for and will not pay the fees of any other counsel.* The Company will not pay any fees, costs or expenses incurred by an insured in the defense of those causes of action which allege matters not insured against by this policy." (Italics added.)

San Jacinto Z cites the last sentence alone and says it excludes only liability for costs incurred in defending uncovered causes of action and therefore includes liability for all costs incurred in defending covered causes of action, whether arising from the services of counsel the insurer chose or not. This construction would render meaningless the two preceding sentences of the title policy. They provide that after the insured has given the insurer a written request to provide a defense with respect to a covered claim, the insurer shall provide the defense and shall have the right to choose the counsel to defend the litigation. They further make perfectly clear that the insurer shall not be liable for the fees of any other counsel, i.e., counsel it has not chosen to defend a covered claim. The final sentence, upon which San Jacinto Z relies, does not contradict the preceding sentences by making the insurer liable for fees incurred by counsel it has not chosen and has had no opportunity to choose, but only clarifies that if the insured incurs fees defending causes of action that are not covered by the title policy, the insurer shall not be liable for such fees.

Indeed, as Stewart Title points out, section 7(d) of the title policy emphasizes that "[t]he Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations." In other words, pre-tender defense costs incurred by counsel the insurer has not chosen are not covered.

26

Furthermore, San Jacinto Z's request for pre-tender attorney fees is contradictory to the express language of sections 4(a) and 7(d) of the title insurance policy.

## D. EMINENT DOMAIN ACTION:

### (1) Background—

On February 22, 2007, the Eastern Municipal Water District (EMWD) filed the Eminent Domain Action, naming San Jacinto Z, Pacific Horizon and others as defendants. It identified San Jacinto Z as the owner of the property in question. In addition, it identified Pacific Horizon as the owner of beneficial interests in the property under deeds of trust recorded on August 1, 2003, September 30, 2003, November 7, 2003 and March 11, 2004. EMWD requested that the identified property be condemned to its own use, and "[t]hat just compensation be ascertained and assessed and the amount of the award for said property be first determined between plaintiff and all defendants claiming any interest therein . . . ." On March 21, 2007, EMWD filed its first amended complaint, in which San Jacinto Z and Pacific Horizon were again named as defendants.

In its May 31, 2007 answer to the first amended complaint, Pacific Horizon admitted that it claimed an interest in the property pursuant to the identified deeds of trust securing a loan made on or about August 1, 2003. In addition, it claimed to hold a beneficial interest in the property arising out of the assignment of an interest in yet another deed of trust, also recorded in 2004. Pacific Horizon alleged that the amount of $7,000,000 remained due and owing and that it was "entitled to recovery of this amount that would otherwise be payable to any other defendant . . . claiming an interest in the real property, as just compensation for the plaintiff's taking of the real property . . . ." Pacific Horizon further denied "that any other party defendants [had] any superior right, title, or interest in the real property . . . ."

27

San Jacinto Z tendered the defense of the Eminent Domain Action to Stewart Title in September 2007. Stewart Title denied the tender on January 11, 2008.[12] San Jacinto Z filed its action against Stewart Title on September 1, 2009.

The trial court granted summary judgment in favor of Stewart Title. It held: (1) the Eminent Domain Action was not covered by the title policy and was subject to title policy exclusion No. 2; (2) the title policy only obligated Stewart Title to defend against "causes of action" and Pacific Horizon's claims were not "causes of action;" (3) the Eminent Domain Action was subject to title policy exclusions 3(a) and (d) and was excepted from coverage under title policy exception B.I.3; and (4) San Jacinto Z's claims failed because it did not provide a proof of loss.

*(2) Analysis—*

On appeal, San Jacinto Z says the trial court erred in its ruling for two reasons: (1) the claim was a covered claim; and (2) the failure to file a proof of loss did not bar the claim. We agree the court erred in granting summary judgment with respect to the Eminent Domain Action, for reasons we shall show.

*(a) Covered claim*

In its motion for summary judgment, Stewart Title argued that the claim was not covered by the insuring clause of the title policy. The insuring clause provides coverage for damage sustained by the insured by reason of "[t]itle to the estate . . . being vested other than as stated" in the title policy or by reason of "[a]ny defect in or lien or encumbrance on the title." Stewart Title said there was no coverage because the Eminent Domain Action was not a challenge to San Jacinto Z's title.

---

[12] We note that Stewart Title characterized the property interests EMWD sought to condemn as consisting of three easements of record, a chlorination facility located within an easement of record, and a prescriptive easement.

However, in its complaint, EMWD sought a determination of the amount of just compensation to be paid to persons claiming an interest in the property, including both San Jacinto Z and Pacific Horizon. The complaint specifically identified four deeds of trust that EMWD thought might be the basis of beneficial interests vested in Pacific Horizon. In this way, the complaint put in issue Pacific Horizon's ownership interest in the property based upon its liens that were of record before the title policy was issued.

Furthermore, when Pacific Horizon filed its answer, it made clear that it was indeed claiming beneficial interests in the property, based on those four deeds of trust as well as an assignment of another beneficial interest in the property. Moreover, Pacific Horizon claimed that it was entitled to recover the first $7,000,000, because its interests in the property were superior to those of any other defendant.

Without question, Pacific Horizon's liens against the property were being litigated in the Eminent Domain Action. Consequently, San Jacinto Z's claim based on the Eminent Domain Action fell within the insuring clause.

In its motion, Stewart Title also argued it had no duty to defend because title policy exclusion No. 2 specifically excluded eminent domain actions from coverage and because exclusion No. 3(d) excluded claims attaching after the title policy was issued. True, exclusion No. 2 provides there is no coverage for eminent domain actions, and certainly, we see no reason why a title company should have to defend against a public entity's statutory right to take property. It is a different matter altogether, however, to suggest that, once an eminent domain action has been initiated, there is no coverage with respect to title claims asserted by another defendant to that action. And where exclusion No. 3(d) is concerned, although the Eminent Domain Action was filed after the title policy issuance date, the title claims being litigated were based on deeds of trust recorded before that date, not afterward.

29

In addition to the foregoing, Stewart Title asserted in its motion that it had no duty to defend based on the answer filed by Pacific Horizon, because "an answer cannot seek affirmative relief and therefore, by definition, cannot give rise to a duty to defend." However, as we have said, EMWD's complaint essentially placed in issue all defendants' interests in the property and Pacific Horizon, through its answer, stated its claim to an interest in the property based on its liens of record.

Stewart Title cited *Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, having to do with an insurer's duty to defend in an administrative matter before an environmental protection agency, but that case is inapposite. (*Id.* at pp. 860-863.) San Jacinto Z cited *Schuman v. Ignatin* (2010) 191 Cal.App.4th 255 and *Vanderkous v. Conley* (2010) 188 Cal.App.4th 111, cases providing persuasive authority. As *Schuman v. Ignatin*, *supra*, 191 Cal.App.4th 255 shows, a defense raised in a defendant's trial brief can constitute an affirmative cause of action in certain circumstances. (*Id.* at pp. 257, 260, 266-267 [defense regarding validity of recorded CC&R's amendment, raised in supplemental trial brief, was affirmative cause of action barred by statute of limitations]; see also *Vanderkous v. Conley*, *supra*, 188 Cal.App.4th at p. 120 [defendant in quiet title action who answered but failed to file a cross-complaint nonetheless "put [her] cause at issue"].)

The trial court nonetheless was persuaded that the title policy only obligated Stewart Title to defend against "causes of action" and Pacific Horizon's claims were not "causes of action." Stewart Title says this is correct, based on title policy section 4(a). That section, as we have previously observed, states in pertinent part: "Upon written request by an insured . . . , *the Company . . . shall provide for the defense of such insured in litigation in which any third party asserts a claim adverse to the title or interest as insured*, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice . . . to represent the insured as to those stated causes of

30

action . . . . The Company will not pay any fees, costs or expenses incurred by an insured in the defense of those causes of action which allege matters not insured against by this policy." (Italics added.)

We do not interpret title policy section 4(a) as does Stewart Title. As the italicized language shows, consistent with the insuring clause, after the insured has made a written request, Stewart Title shall provide a defense in litigation in which a third party makes a claim adverse to an interest of the insured. Here, Pacific Horizon was claiming in its answer that its interests in the property, based of deeds of trust of record before the title policy was issued, were superior to the interests of San Jacinto Z. In other words, it was asserting a claim alleging liens or encumbrances insured against by the policy. Consequently, Stewart Title had a duty to defend. Nothing in section 4(a) limits coverage for claims arising from alleged defects, liens or encumbrances to those claims set forth in complaints or cross-complaints.

Finally, in its motion, Stewart Title asserted that it had no duty to defend because of title policy exclusion No. 3(a) and title policy exception No. B.I.3. Exclusion No. 3(a) excludes claims "created, suffered, assumed or agreed to by the insured claimant" and exception No. B.I.3 excepts "[e]asements, liens or encumbrances, or claims thereof, which are not shown by the public records." Stewart Title asserted that Pacific Horizon, from and after May 2007,[13] made its claims based upon the allegedly tortious conduct of San Jacinto Z, not upon title defects. However, it cited no filing in the Eminent Domain Action showing that Pacific Horizon based its claim therein on the allegedly tortious conduct of San Jacinto Z. Rather, in the Eminent Domain Action, Pacific Horizon based its claim on deeds of trust of record. Those deeds of trust were not "created, suffered, assumed or agreed to by" San Jacinto Z and they were of record

---

[13] Although it is not perfectly clear, it would appear that Stewart Title meant to refer to Pacific Horizon's May 2007 filing of its lis pendens in the Pacific Horizon Action.

31

before the title policy was issued.  Consequently, they were neither excluded nor excepted from coverage based on either title policy exclusion No. 3(a) or title policy exception No. B.I.3.

### (b)  Proof of loss

In is motion, Stewart Title also claimed that it was not required to defend any of the lawsuits, including the Eminent Domain Action, because San Jacinto Z had failed to provide a proof of loss as required by the title policy and it was prejudiced by that failure.  In support of its claim of prejudice, Stewart Title cited its material fact No. 126, wherein it baldly asserted that it had been prejudiced.  In support of its material fact No. 126, Stewart Title in turn cited the declaration of Karen Storlie, its vice president, counsel, and custodian of records.  In her declaration, Storlie said the failure to provide a proof of loss with respect to any of the lawsuits prejudiced Stewart Title simply "because loss and/or damage is relevant to, among other coverage issues, the applicability of Policy Exclusion 3(c), which excludes '[d]efects, liens, encumbrances, adverse claims, [and] other matters:  [¶] resulting in no loss or damage to the insured claimant.'"  Storlie thus implied that, without a proof of loss, Stewart Title had no information to indicate whether the adverse claim was one that would result in no damage at all to San Jacinto Z.

However, we have located on our own a couple of items of interest which show that Stewart Title did have information on the point.  In support of its motion for summary judgment, Stewart Title provided the declaration of one of its attorneys, Anand Singh.  Attached to that declaration was a copy of a letter dated September 25, 2007 from Attorney Robert Garrett, representing Stewart Title,[14] to Attorney Robert Muller, representing San Jacinto Z.  In that letter, Attorney Garrett described a September 21, 2007 meeting between himself, Attorney Muller and Zuckerman.  Attorney Garrett

---

[14]    Attorney Garrett refers to his client simply as "Stewart Title," without differentiating between Stewart Title Guaranty Company and Stewart Title of California, Inc.

stated: "[D]uring the course of that discussion Mr. Zuckerman noted that in an eminent domain proceeding [Pacific Horizon] asserted that it has a $7 million claim with priority over San Jacinto Z's claim to the proceeds deposited by the governmental agency into the eminent domain proceeding, which Mr. Zuckerman advised are in the range of $300,000. I understand this to constitute a tender by San Jacinto Z of its defense in connection with the eminent domain proceedings."

So, on the date of tender, Stewart Title was informed that Pacific Horizon was asserting that it had a $7 million claim with priority over the claim of San Jacinto Z, vis-à-vis a mere $300,000 deposit for just compensation. Given that, it is hard to say that Stewart Title had no information to indicate whether San Jacinto Z could potentially suffer a monetary loss as a result of the adverse claim of Pacific Horizon. The information indicated that there was at least $300,000 in just compensation in issue and that Pacific Horizon was claiming all of it, and then some.

Section 5 of the title policy provides in pertinent part: "[A] proof of loss or damage signed and sworn to by each insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. . . . *If the Company is prejudiced by the failure of a claimant to provide the required proof of loss or damage,* the Company's obligations to such insured under the policy shall terminate, including any liability or obligation to defend . . . ." (Italics added.)

By the terms of the title policy, then, Stewart Title has no obligation to defend if the insured fails to provide a proof of loss and Stewart Title is prejudiced by that failure. However, the September 25, 2007 letter in and of itself shows there was a factual question as to whether Stewart Title was prejudiced. Consequently, the court erred in granting summary judgment on the basis of San Jacinto Z's failure to submit a proof of loss.

33

### III

### DISPOSITION

The judgment of dismissal is reversed as to Stewart Title Guaranty Company and the matter is remanded to the trial court for further proceedings consistent with this opinion. In the interests of justice, each party shall bear its own costs on appeal.


MOORE, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.